1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

JACK MACKIE,

               Plaintiff,

     v.

MICHAEL J. HIPPLE, et al.,

               Defendants.

No. C09-164 RSL

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
REGARDING FAIR USE
AFFIRMATIVE DEFENSE

15

16

## I.    INTRODUCTION

17

18

19

      This matter comes before the Court on plaintiff Jack Mackie's motion for summary judgment seeking an Order to dismiss defendant Michael Hipple's fair use affirmative defense (dkt. #82)[1] and defendant's motion for consideration of his late-filed declaration (dkt. #104).[2]

20

21

22

23

24

[1]Plaintiff filed his initial motion without proper citations to the record as required by Local Civ. R. 10(e)(6). On the following day, plaintiff filed a revised motion "with corrections" that "improves the original's reference to supporting data." Dkt. #86 at 2. In his revised motion, plaintiff again violates Rule 10(e)(6) by not including a citation to the docket number of previously filed documents. The Court warns the parties that further violations of the local rules may result in sanctions, or an Order striking a later-filed "revised" document. See Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (it is not the court's task to scour the record in search of genuine issue of triable fact).

25

26

[2]In the interests of justice, the Court will consider the late-filed declaration (dkt #105) and plaintiff's response to the late-filed declaration (dkt. #108, #109).

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

Defendant argues that the Court should deny the motion because of disputed issues of material fact and because undisputed facts weigh in favor of finding fair use. Dkt. #93 (Opp'n). Having reviewed the memoranda, declarations, exhibits, and the record herein, the Court DENIES plaintiff's motion for the reasons stated below.

## II.    UNDISPUTED FACTS

Plaintiff is one of the creators of and copyright owners to the "Dance Steps on Broadway" sidewalk-embedded sculpture pieces. Dkt. #83 (Mackie Decl.) ¶1. The Dance Steps on Broadway depict brass shoes and arrows of eight separate dance patterns that are installed in separate locations in sidewalks adjacent to about a mile stretch of Broadway Avenue in Seattle. Id. ¶2. The particular installation at issue in this case reflects the Mambo. Id. ¶3; dkt. #84 (Hayton Decl.), Ex. A. Plaintiff testified that when he came up with the idea, he was charged to influence the design of the street landscape, not necessarily to create a specific artwork. Dkt. #84-6, Ex. F (Mackie Depo.) at 15:10-16:4. His inspiration came from watching Gene Kelly dancing and singing outdoors in the movie Dancing in the Rain. Id. at 17:4-25. He wanted to create an image that would combine "Gene Kelly and the confrontation of the cop, and dancing on Broadway, and choreography" to see if people would in fact dance if they were given a set of instructions. Id. 18:1-9. Plaintiff researched and learned the proper dance steps, and worked with a small foundry to cast the bronze and finish the molds. Id. at 21:23-24:9.

Defendant's photograph shows a model's feet and legs on the sidewalk with a portion of the bronze diagram of the Mambo. Dkt. #105 (Hipple Decl.) ¶1. Defendant's purpose in taking the picture was to test his new swing tilt lens.[3] Id.; dkt. #84-5, Ex. E (Hipple Depo.) at 12:22-13:7, 24:3-17. Defendant testified that the model began dancing on the bronze feet

---

[3] Defendant testified that a "swing tilt lens is primarily used for architectural photography" to swing the image in and out of focus. Id. at 13:11-14:9. Defendant also states that since he was using a new lens, his "intent was to focus on the feet but the nature of the lens is such that even minor adjustments in the lens can throw an entirely different part of the image out of focus." Dkt. #105 (Hipple Decl.) ¶3. The result was that the legs and feet of the model were out of focus, instead of the bronze dance steps. Id.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

spontaneously when he took the photographs, and that he did not go to Broadway with the intent to take pictures of the bronze steps. Dkt. #84-5, Ex. E (Hipple Depo.) at 79:20-80:9. However, once he took the pictures, he intended the dance steps to be part of the photograph. Dkt. #109, Ex. A (Hipple Depo.) at 52:21-53:1. His intended point of interest for the viewer was "the feet with the star shoes and the legs of the model." Dkt. #105 (Hipple Decl.) ¶4. Defendant intended the bronze diagram to be incidental. Id. ¶5. He considered "the stars on the dancer's shoes to be the key element in the joyful aspect of the photograph. The sidewalk dance diagram merely conveys the more important aspect to [him], that the model is dancing." Id. ¶6. Defendant testified that the only objective in mind when he took the picture was to test a new swing tilt lens. Dkt #84-5, Ex. E (Hipple Depo.) at 24:3-17.

III.    **DISCUSSION**

    A.    **Legal Standard on Summary Judgment**

       Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Celotex Corp., 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150-51 (2000).

       Fair use is a mixed question of law and fact. Harper & Row Publishers v. Nation Enters., 471 U.S. 539, 560 (1985). "If there are no genuine issues of material fact, or if, even

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 3

after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work." Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1151 (9th Cir. 1986).

**B.     Fair Use**

"Fair use was traditionally defined as 'a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent.'" Harper, 471 U.S. at 549. Congress codified the judicial doctrine of fair use in the Copyright Act of 1976. 17 U.S.C. §107. "The fair use defense permits the use of copyrighted works without the copyright owner's consent under certain situations." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1163 (9th Cir. 2007). "The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product." Id. The fair use doctrine permits and requires courts to avoid rigid application of the copyright statute when it would stifle the very creativity which the law is designed to foster. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994).

To determine whether a work constitutes fair use, courts engage in a case-by-case analysis and a flexible balancing of relevant factors. Mattel Inc. v. Walking Mountain Prods., 353 F.3d 792, 800 (9th Cir. 2003). The four factors the Court considers and weighs are (1) the purpose and character of use, including whether such use is of commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and sustainability of the portion used in relation to the copy-righted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. §107.

**1.     Purpose and Character of Use**

The first factor requires the Court to consider "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. §107(1). The Court looks to several sub-factors, including whether the use is of a

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

1   commercial nature, whether defendant acted in good faith, and whether the new work is

2   transformative.  See Harper, 471 U.S. at 562; Perfect 10, 508 F.3d at 1164.

3       A commercial use of copyrighted material is presumptively an unfair exploitation of the

4   monopoly privilege that belongs to the owner of the copyright.  Harper, 471 U.S. at 562.

5   Defendant argues that he believed that his photograph was not of a commercial nature because

6   it was editorial in nature.  Dkt. #105 (Hipple Decl.) ¶7.  However, the "crux of the

7   profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but

8   whether the use stands to profit from exploitation of the copyrighted material without paying

9   the customary price."  Harper, 471 U.S. at 562.  Defendant does not dispute that he stood to

    profit from the photograph, albeit, a small profit.

10      "Also relevant to the 'character' of the use is 'the propriety of the defendant's

11  conduct.'"  Id.  Defendant argues that he acted in good faith because his original intent was

12  simply to test his new swing-tilt camera lens.  Dkt. #93 (Opp'n) at 8.  He later selected the

13  photograph for his portfolio based on its stylistic appeal to him.  Dkt. #105 (Hipple Decl.) ¶2.

14  Defendant also testified that he did not realize the dance steps were copyrighted because they

15  were on a public sidewalk and he was not thinking about future usage.  Dkt. #94-1 (Hipple

    Depo.) at 42:23-43:23.  Plaintiff does not contest the propriety of defendant's conduct.

16      The parties dispute whether defendant's work is transformative.  A work is

17  transformative when it "adds something new, with a further purpose or different character,

18  altering the first with new expression, meaning, or message."  Perfect 10, 508 F.3d at 1164

19  (quoting Campbell, 510 U.S. at 579).  In contrast, if the new work supersedes the use of the

20  original, the use is likely not a fair use.  Id.  Although "transformative use is not absolutely

21  necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is

22  generally furthered by the creation of transformative works."  Campbell, 510 U.S. at 579

23  (citations omitted).  Plaintiff argues that the photograph is not transformative because both

24  images "had the same objective of engaging pedestrians in dance or at least its image."  Dkt.

25  #86 (Mot.) at 9.  Defendant argues that the dance steps may invite interaction, but does not

    depict interaction, whereas defendant's photograph depicts a woman's legs and shoes

26

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

interacting with a diagram of a dance step. Dkt. #93 (Opp'n) at 7. Defendant states that his purpose in taking the picture was to test his new swing tilt lens, and that the picture was taken when the model began dancing spontaneously on the bronze steps. Dkt. #84-5, Ex. E (Hipple Depo.) at 12:22-13:7, 24:3-17, 79:20-80:9.

The Court finds that an issue of material fact exists with respect to whether the photograph is sufficiently transformative and whether plaintiff and defendant shared a common purpose of use.

## 2.    Nature of Copyrighted Work

The second factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." Campbell, 510 U.S. at 586. Defendant argues that plaintiff's dance steps are informational given his extensive research. Dkt. #93 (Opp'n) at 10. Plaintiff did research various dances, but he changed the pattern of the actual dance steps taken by dancers he hired so that "they would not be on top of one another, so that the arrows would move correctly from one to another[,]" and so that the pieces would be "visually strong." Dkt. #94-2 (Mackie Depo.) at 22:16-23:11. While plaintiff has the stronger argument that the dance steps are creative in nature, the Court finds that an issue of material fact exists with respect to the nature of the copyrighted work.

## 3.    Amount and Sustainability of Portion Used

"The third factor asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." Campbell, 510 U.S. at 586 (quotations omitted). This factor requires the Court to consider the quantity of the materials used and the quality and importance of the use. Id. at 587.

The entire copyrighted work depicts brass shoes and arrows of eight separate dance patterns that are installed in separate locations in sidewalks. Dkt. #83 (Mackie Decl.) ¶¶1-2. Defendant's photograph includes a portion of the Mambo, one of the eight installations. Thus, quantitatively, a small portion of the copyrighted work was used. However, plaintiff argues

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

that the portion of the Mambo captured in the photograph is the essence of his whole work –
"his typical Dance Step format and vision."  Dkt. #86 (Mot.) at 11.  According to defendant,
the focal point was the model's legs and shoes (dkt. #105 [Hipple Decl.] ¶¶3-6), and the dance
steps were merely incidental (id ¶5; dkt. #84 (Hayton Decl.), Ex. A).  Contrast Harper & Row,
471 U.S. at 566 ("The Nation article is structured around the quoted excerpts which serve as its
dramatic focal points.")   A reasonable juror could conclude that the legs and shoes were the
focal point of the photograph, rather than the dance steps.  Accordingly, the Court finds that
plaintiff has not met his burden with respect to the third factor.

### 4.   Effect of Use upon Potential Market

The fourth factor focuses on the effect of the use upon the potential market for or value
of the copyrighted work.  17 U.S.C. §107(4).  This last factor is the single most important
element of fair use.  Harper, 471 U.S. at 566.  "Fair use, when properly applied, is limited to
copying by others which does not materially impair the marketability of the work which is
copied.  Id. at 566-67.  To negate fair use, plaintiff "need only show that if the challenged use
'should become widespread, it would adversely affect the *potential* market for the copyrighted
work."  Id. at 568 (emphasis in original).  "This inquiry must take account not only of harm to
the original but also of harm to the market for derivative works."  Id.

Plaintiff states that because "of the iconic nature of the Dance Steps on Broadway,
numerous people have copied [his] work and attempted (or succeeded) in selling it without
[his] permission.  In order to protect and further [his] reputation and career, [he] cannot afford
to permit imitations."  Dkt. #100 (Mackie 2d Decl.) ¶5.  Defendant argues that plaintiff has no
current or potential market for photographs of the dance steps, relying on plaintiff's testimony
that he does not sell photographs of his work and has not received a monetary fee for any of the
licences or releases he has given.  Dkt. #94-2 (Mackie Depo.) at 37:20-22, 56:10-19.  However,
the proper focus is on potential markets, not simply past conduct of the copyright holder.
While the record is silent as to potential markets, unauthorized photographs of the dance steps
sold for profit could have an adverse market effect on the original and derivative works.  See
e.g., Reyes v. Wyeth Pharm., Inc., 603 F. Supp. 2d 289, 300 (D.P.R. 2009) ("it is clear that

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

1    widespread use of artwork in advertisements without permission of the copyright holder would

2    destroy the market for selling the artwork for use in advertisements.").

3              **5.      Determination of Fair Use**

4              While plaintiff's arguments are stronger in some factors, and weaker in others, the Court

5    finds that plaintiff has not met his burden on summary judgment.

6    **IV.    CONCLUSION**

7              For all the foregoing reasons, the Court DENIES plaintiff's motion for summary

    judgment as to defendant's fair use defense.

8

9              DATED this 3rd day of March, 2011.

10

11                                      *MM S Casnik*

12                                      Robert S. Lasnik
                                        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8